## Russo *v.* Pittsburgh Railways Company, Appellant.

Argued November 10, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*D. H. McConnell*, for appellant.

*S. V. Albo*, with him *M. E. Catanzaro*, for appellee.

OPINION BY FINE, J., March 22, 1949:

Michael Russo, appellee, was employed by an independent contractor to assist in the repair of a water line underlying the street car tracks of the Pittsburgh Railways Company, appellant. He instituted this action in trespass to recover damages for injuries sustained when one of appellant's street cars struck a plank which was lying about two inches from the street car rail. The impact hurled the plank in such a manner as to strike appellee's foot while he was in the act of jumping or running away from the tracks to allow the trolley to pass. A jury returned a verdict for Russo. This appeal is from the order of the court below dismissing appellant's motion for judgment *non obstante veredicto.*

The verdict of the jury resolved all conflicts in the testimony in favor of appellee and the evidence must be viewed in a light most favorable to him, giving him the benefit of all reasonable inferences and deductions to be made therefrom: *Stephany v. Equitable Gas Co.*, 347 Pa.

110, 31 A. 2d 523. Viewed in such light the evidence would warrant the following findings of fact by the jury. On May 21, 1946, about 2:00 p.m., a plumbing contractor, James A. Sweeney, and two of his employes, one of whom was Russo, were engaged in covering a hole in a dummy between two street car tracks on Liberty Avenue in the City of Pittsburgh, after completing repairs to the water line underlying the tracks. Immediately before the accident appellee was nailing wooden planks together to effect a cover or a firm base to temporarily enable traffic to travel over the excavation. The required length of the planks was about four feet. The planks were brought to Russo by his helper, Kelly. One plank provided by Kelly was "one inch too long," whereupon Russo told Kelly he could not use it and requested that another plank be brought to him. Kelly threw that plank in the dummy and proceeded to secure another plank. The discarded plank was about two inches from the inside East Liberty track, and remained lying across the dummy.

Sweeney was stationed fifty to sixty feet from where Russo and Kelly were working to watch southbound traffic. Sweeney stopped the appellant's southbound trolley car and after flagging Russo permitted the trolley to proceed. When Russo saw the street car approaching about thirty or thirty-five feet away he arose from his kneeling position and raised his hands and motioned for it to stop. Russo noticed that the car was not going to stop and "started to run away." He had run only a short distance when the trolley struck the plank and it in turn hit Russo's ankle, fracturing it. Russo continued to cross the street while the street car pulled ahead about forty-five or fifty feet and slowed down. The motorman looked back and again proceeded, apparently ignorant of what had happened.

An eye witness who had been watching Russo work testified that he saw Russo put up his hands to signal

the motorman to stop and saw the street car hit the plank which then hit Russo. Appellant's motorman testified that he had no knowledge of an accident happening at that time or place but did recall that men were working there for a few days.

Appellant's sole complaint is that there was no evidence of its negligence, i.e., that the motorman had not breached any duty owed to appellee. More specifically, it is argued that appellee's evidence describing the accident was so confusing and vague that a jury could not visualize what had actually occurred, and consequently the evidence did not warrant the jury's finding of negligence. Appellant's contention cannot be sustained. Appellant's motorman testified that he knew repairs were going on at this site and that workmen and their materials were in close proximity to the tracks. He knew there was a dangerous condition ahead otherwise there was no need of a flagman. Ordinarily a compliance with the flagman's directions or instructions might be indicative of the exercise of care but certainly it is not conclusive. The flagman's signal to proceed conferred no arbitrary right upon the motorman; at most it was a right qualified by a responsibility and a duty to proceed with such care as was imposed by the prevailing circumstances. In no event could he blindly operate his car oblivious to that which was obvious or which he could have seen if he was alert. He must yield to the concrete facts which would ordinarily cause a reasonable man in the normal exercise of his mental faculties to conclude that to proceed might expose workmen in or near his pathway to injury. It cannot be said the motorman was disarmed by the flagman's action and was not apprised of the imminence of danger. When Russo saw the trolley pass the flagman, he arose from a kneeling position occasioned by nailing planks, and with both hands and by voice attempted to stop the oncoming car. Seeing these attempts were in vain, he

ran from the scene, which action could have conveyed only one meaning to an alerted motorman, i.e. that Russo was attempting to escape injury. Russo's conduct should not have been ignored or unheeded; it was enough to cause the motorman to apprehend imminent danger. These circumstances presented a situation wherein the person operating the trolley car was manifestly required to exercise a greater degree of care for the protection of such workmen than to pedestrians. Cf. *Van Zandt v. Philadelphia, Baltimore & Washington Railroad Co.*, 248 Pa. 276, 282, 93 A. 1010; 55 Am. Jur., Urban Transportation, §§ 223, 244; *Bengivenga v. Brooklyn Heights R. Co.*, 62 N. Y. S. 912, 913. The evidence, taken as a whole, indicates very forcibly that it was the duty of the motorman to approach and pass the excavation slowly and cautiously, at a rate of speed which would have enabled him to stop his car almost instantly, if necessary. Cf. Shearman & Redfield, Law of Negligence, (Rev. Ed. 1941) page 1210.

The reasonably foreseeable risk of harm defines the orbit of duty to be imposed, which duty is breached by the failure to exercise reasonable care commensurate with the circumstances. Cf. Restatement, Torts, § 282. ". . . [as] negligence is to be determined as a matter of law only in clear cases, where the degree of care varies with the circumstances and there exists a doubt as to the inferences to be drawn, the question of negligence is for the jury": *Jackson v. Curry*, 117 Pa. Superior Ct. 63, 68, 177 A. 346. Whether the plank was in such a position and for such a period of time, whether it was so noticeable that it could have or should have been seen by the motorman, were all questions which were peculiarly for the jury. The jury in returning a verdict in favor of appellee has determined that the motorman was negligent in not observing that which was or should have been observable in the circumstances.

Judgment affirmed.