Costanzo *v.* Jim Belcher Buick, Inc., Appellant.

Argued December 10, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Paul Lane Ives,* for appellant.

*Robert J. Scallan,* for appellee.

OPINION BY GUNTHER, J., March 18, 1959:

This appeal is from the refusal of a motion for judgment n.o.v. after verdict was rendered in favor of plaintiff, Vincent Costanzo, in an action of assumpsit to recover for the loss of an automobile by fire.

On November 10, 1956, plaintiff delivered his 1955 Buick automobile to the defendant, Jim Belcher Buick, Inc., at its place of business for servicing and inspec-

tion. Defendant was engaged in the business of selling, servicing and repairing automobiles at 33 East Baltimore Avenue in the Borough of Clifton Heights, Delaware County. Around 4:00 P.M. on November 11, 1956, a fire occurred which badly damaged defendant's building and a number of automobiles, including that of plaintiff.

When the fire broke out, flames were seen coming out of the center automobile parked in defendant's showroom in which defendant had installed a light fixture consisting of a bracket extending across the inside ceiling of the automobile, located between the dome light in the center and the rear window, from which a six inch diameter fluorescent tube light was suspended four or five inches from the ceiling. William Francis McGinnis, plaintiff's witness, testified that he discovered the fire and turned in the fire alarm. He testified that the flames were coming out of the window of the center car and rising above the car up and around the loft of the office over the showroom but that the area of the showroom floor was not burning, not even around the center car.

William James Myers testified that the interior of this particular car was burned out completely, but the interiors of the other cars in the building were only scorched and smoke-damaged. Both he and Mr. Taylor, as expert witnesses, testified that in their opinion the fire originated in this particular car. Plaintiff further proved that the light in question was attached to a light cord running from a standard receptacle in the showroom to the light fixture in the car by way of the trunk of the car. Defendant's used car manager testified that when he passed defendant's showroom at about 3:00 A.M. on the morning of the fire, the showroom was lit up as usual. He stated that he couldn't tell whether the light in the car was on or not, but that

the purpose of the light was to display the interior of the car and that the showroom was lit up as usual that night.

The only question to be decided on this appeal is whether the jury had evidence from which it could find negligence on the part of the defendant or whether this fire was a general fire in which plaintiff's automobile was destroyed.

The evidence disclosed that the light fixture was found on the floor of the gutted car and that the light bulb in the fixture had been broken. Mr. Myers testified that he had considerable experience as a fireman and at the time of the fire, he was assistant chief of the fire company which took part in extinguishing the fire. He examined the premises after the fire and saw the car which was burned out in which he found remnants of the light found "down on the floor proper". Sgt. Charles Taylor, State fire marshal with the Pennsylvania State Police, stated he was familiar with the investigation of the causes of fires. He examined the premises on November 12, 1956 and he saw the car in question, completely gutted inside, and found the bracket and remains of the light on the floor of the car behind the rear seat. He testified as follows: "Well, this light was extended on a metal bracket between—and in all General Motors cars on the back of the windows there are two coat hanger hooks for coat hangers; that is where the metal bracket was attached. The light, of course, was in the middle of this bracket; the light falling down on the upholstery of this car, probably cracking the light, the wires in the light touching the fabric of the back seat could have started this fire."

The jury was entitled to hear the testimony of this expert whose experience and knowledge in the causes of fires was far superior to that of ordinary laymen. This testimony was not a guess or conjecture but was

deducible as a reasonable inference from the facts and conditions proved. *Mars v. Philadelphia R. T. Co.*, 303 Pa. 80, 154 A. 290. Where the evidence points to a certain cause which would make defendant liable, plaintiff will not be denied redress merely because there may be some other possible cause for the accident. In such case the question is for the jury. *Foley v. Pittsburgh Des Moines Company*, 363 Pa. 1, 68 A. 2d 517. Where there is doubt as to the inference to be drawn from the evidence, the question of negligence is properly for the jury. *Aquadro v. Crandall-McKenzie & Henderson, Inc.*, 182 Pa. Superior Ct. 435, 128 A. 2d 147; *Dillon v. Wm. S. Scull Company*, 164 Pa. Superior Ct. 365, 64 A. 2d 525; *Russo v. Pittsburgh Railways Co.*, 164 Pa. Superior Ct. 396, 64 A. 2d 666. Such evidence of negligence may be shown by circumstantial or direct evidence. *Trostel v. Reading Steel Products Co.*, 152 Pa. Superior Ct. 273, 31 A. 2d 909.

As stated by the court below, "There are only three possible inferences to be drawn from the facts of this case with respect to the fallen light fixture: (1) That the light fell and broke before the fire. (2) That the fire caused the light to fall and break. (3) That the light fell from some other cause." Just which happened would be a question for the jury to decide if sufficient evidence of negligence was produced to permit the case to go to the jury. We are of the opinion that this was a proper case to submit to the jury.

Judgment is affirmed.