Harry DUCKWORTH

v.

FORD MOTOR COMPANY, Defendant
and Third Party Plaintiff,

v.

JOHN B. WHITE, INC., Third Party
Defendant.

Civ. A. No. 23785.

United States District Court
E. D. Pennsylvania.

Sept. 28, 1962.

Manuel Steinberg, Philadelphia, Pa., for plaintiff.

Foley, Schimpf & Steeley, Michael A. Foley, Philadelphia, Pa., for defendant.

Howard R. Detweiler, Philadelphia, Pa., for third party defendant.

LUONGO, District Judge.

This is a diversity suit by Harry Duckworth, a citizen and resident of Pennsylvania, against Ford Motor Company, a Delaware corporation, seeking recovery for personal injuries and property damage caused by a defective steering assembly in a car manufactured by Ford. The action against Ford charged breach of warranty and negligence. Ford joined, as a third party defendant, John B. White, Inc., a Pennsylvania corporation, the authorized Ford dealer which sold the car to Duckworth, alleging that White was negligent and that its negligence caused or contributed to the happening of the accident.

At the conclusion of the trial the matter was submitted to the jury on special interrogatories, to which the jury responded as follows:

"1. Do you find the defendant, Ford Motor Company, guilty of breach of implied warranty which was a proximate cause of the accident?

"Answer Yes or No.    Yes

"2. Do you find the defendant, Ford Motor Company, guilty of negligence which was a proximate cause of the accident?

"Answer Yes or No.    Yes

"If your answer to *both* interrogatories 1 and 2 is 'NO', do not answer interrogatories 3, 4 and 5.

"If your answer to interrogatory 1, or to interrogatory 2, or both is 'YES', answer interrogatories 3, 4 and 5.

"3. Do you find the third-party defendant, John B. White, Inc., guilty of negligence which was a proximate cause of the accident?

"Answer Yes or No.    Yes

"4. Do you find the plaintiff, Harry Duckworth, guilty of negligence which caused or contributed to the accident?

"Answer Yes or No.    No

"5. In what amount do you assess damages?

"$50,000

On the jury's answers to interrogatories, the Court molded the verdict and entered judgment thereon in favor of Duckworth against Ford in the amount of $50,000.00 and, in the third party action, verdict and judgment thereon in favor of Ford for contribution against

White as a joint tortfeasor. Thereafter, Ford moved for a new trial and to set aside the verdict and judgment in Duckworth's favor. White moved to set aside the verdict and judgment in Ford's favor in the third party action. At oral argument Ford abandoned the motion for new trial and is now pressing only the motion to set aside the verdict and judgment against it. The latter motion and White's motion in the third party action are before the Court for disposition.

In light of the jury's answers to interrogatories, the following facts are accepted as having been established by the evidence:

On February 18, 1957, Ford delivered to White the new car which White later sold to Duckworth. New cars are operational when delivered. The dealer is required only to perform new car "make ready" service (e. g. motor tune-up, transmission adjustments, tightening connections of certain parts and accessories) and state inspection (to determine that the new cars conform to safety standards of the Bureau of Highway Safety of the Commonwealth of Pennsylvania). The "make ready" service and the state inspection were performed by White and, on February 28, 1957, the car purchased by Duckworth was delivered to him. For about three days it functioned properly, then it developed a "stickiness" or "lumpiness" in the steering. On occasion the steering stuck, requiring a pull or tug on the steering wheel to free it. A gradually increasing amount of free play developed in the steering wheel.

On March 28, 1957, after the vehicle had been driven an estimated [1] 600–700 miles, it was returned to White for the 1,000 mile inspection. At that time Duckworth complained to White about "stickiness" in the steering but no notation concerning that complaint was made on the service card, although other complaints were noted thereon. Duckworth did not again notice excess free play in the steering wheel until the day following the 1,000 mile inspection. On April 3, 1957, while driving the car on Route # 73 near Maple Shade, New Jersey, Duckworth attempted to steer it around a gradual turn in the road but, although he pulled the steering wheel with all his strength, he was unable to turn it, the car struck an eight to twelve inch curb, jumped over it and struck a utility pole. The car was demolished and Duckworth seriously injured.

The steering failure resulted, according to plaintiff's expert, from the "locking" of the steering assembly caused when the adjusting screw on the steering assembly backed out and became wedged against the steering assembly cover plate, preventing the proper operation of the steering assembly. If the mechanism had been properly assembled, the adjusting screw would have been locked in place by a properly secured jam nut, with ample clearance between the adjusting screw and the cover plate to permit free operation of the steering assembly. The jam nut was not properly secured, consequently the back and forth movement of the steering wheel as the car was driven gradually worked the adjusting screw outward toward the steering assembly cover plate. The outward movement of the adjusting screw was accelerated by the fact that the surface of the sector shaft on which needle bearings operated by direct contact, was of a hardness less than the minimum specified for safe operation by the needle bearing manufacturer. The deficiency in surface hardness caused indentations on the surface of the sector shaft when the needle bearings moved over it in response to movement of the steering wheel. Subsequent movement of the needle bearings over the indented surface of the sector shaft resulted in "stickiness", accelerating the outward movement of the adjusting screw.

## FORD'S MOTION

Ford relies on two grounds to set aside the verdict and judgment in Duck-

---

1. The odometer failed to register at any time.

worth's favor, (a) lack of privity of contract and (b) alleged insufficiency of the evidence.

(a) *Privity.* The sale of the Duckworth vehicle was made in Pennsylvania, and Pennsylvania law, therefore, is controlling on the warranty issue. Under the Uniform Commercial Code, the purchaser of a new automobile has the benefit of an implied warranty of merchantability, 12A P.S. § 2–314[2], unless the parties specifically exclude the applicability of the warranty, 12A P.S. § 2–316. There was in this case a written contract which purported to embody the entire agreement between the parties, but it did not specifically exclude the warranty of merchantability hence that warranty was in effect. Jarnot v. Ford Motor Company, 191 Pa.Super. 422, 156 A.2d 568 (1959).

Ford contends that since it did not deal directly with Duckworth, there is no privity of contract between them, therefore, Duckworth is not entitled to the benefit of any warranty implied in law. That view of the law, at one time widespread, has been considerably eroded and it is now clear that privity of contract is not required in Pennsylvania, certainly not in suits by purchasers of new automobiles against the manufacturer. Jarnot v. Ford Motor Company, supra.

Lack of privity does not bar Duckworth's claim for yet another reason. The jury found that Ford's negligence (as well as its breach of warranty) was a proximate cause of the accident, and it is well settled that privity of contract is not required in an action against a manufacturer based on negligence. MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, (1916); Foley v. Pittsburgh-Des Moines Company, 363 Pa. 1, 68 A.2d 517 (1949); Restatement, Torts § 395, § 396.

(b) *Insufficiency of Evidence.* Ford contends that there is no evidence in the record to support the jury's findings of breach of warranty and negligence against it. Plaintiff's witness, Pruyn, qualified as an expert based on his education and experience. He examined parts of the Duckworth vehicle and was able to express the opinion outlined above as to the cause of the accident. According to Pruyn the crucial factor in the cause of the accident was the loose jam nut. The defective sector shaft was an accelerating agent, explaining in some measure why the accident happened *when* it did. The loose jam nut alone would have permitted the adjusting screw to back out and lock the steering mechanism although it would probably have taken a longer period of time to occur without the "stickiness" of movement caused by the defective shaft.

It was implicit in the answers to interrogatories that the jury found Ford responsible for the loose jam nut. The Duckworth vehicle was new. At the time of the accident it was a month or so old and had been driven only 600–700 miles. Duckworth drove it in a proper manner and did nothing to cause harm to the steering mechanism. There is evidence that he experienced difficulty with the steering only a matter of days after he took delivery and that this difficulty became worse and persisted up to the time of the accident, except that he noticed no excess play in the steering wheel for a brief period immediately after the vehicle was given the 1,000 mile inspection. Pruyn testified that the locking which caused the accident developed gradually as the adjusting screw worked its way out. He also testified that the

2. "§ 2—314. Implied Warranty: Merchantability; Usage of Trade
 "(1) Unless excluded or modified (Section 2—316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind or though not a merchant states generally that they are guaranteed. * * *
 "(2) Goods to be merchantable must at least be such as * * *
 "(b) are of fair average quality in the trade and within the description; and
 "(c) are fit for the ordinary purposes for which such goods are used; * * *"

jam nut, properly secured, could not loosen of its own accord and that it could not have become loose as a result of the accident. The foregoing facts are sufficient to support an inference of negligence and breach of warranty against Ford. A reasonable explanation of the accident was that the jam nut was improperly secured when the car was turned out at the factory and gradually loosened as the vehicle was driven. Plaintiff's evidence was sufficient to create a jury question. Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951), cert. den. 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951); Jarnot v. Ford Motor Company, supra; Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960).

■ Ford does not seriously question that the evidence is sufficient to support an inference of negligence and breach of warranty against it. The main thrust of Ford's position seems instead to be that plaintiff failed to carry his burden since other inferences, particularly the possibility of White's intervention, were not conclusively negated. That plaintiff's burden is not so onerous is clear from the following statement by the Pennsylvania Supreme Court in Lear v. Shirk's Motor Express Corporation, 397 Pa. 144, 152, 152 A.2d 883, 887 (1959).

> " * * * A plaintiff is entitled to have his case considered by the jury even though he does not show that the only reasonable inference is that defendant's negligence was the proximate cause of the accident. It is enough that he produces evidence which may properly be found by the jury to justify an inference that the defendant's negligence was the proximate cause of the accident because such evidence outweighs even though it does not *exclude* an inference that the defendant was not negligent or that his negligence was not the proximate cause of the accident. * * * "

Also see Smith v. Bell Telephone Co. of Pa., 397 Pa. 134, 137–139, 153 A.2d 477 (1959); Ebbert v. Philadelphia Electric Company, 330 Pa. 257, 261–262, 198 A. 323 (1938); Costanzo v. Jim Belcher Buick, Inc., 189 Pa.Super. 136, 149 A.2d 147 (1959).

In the light of the foregoing, Ford's motion to set aside the verdict and judgment in Duckworth's favor will be denied.

## WHITE'S MOTION

The jury found that White was negligent and that its negligence was a proximate cause of the accident. At the time the jury's answers to interrogatories were given to me, I was of the opinion that the finding of negligence against White *required* the entry of verdict and judgment of contribution in the third party proceeding against White, but now, after a thorough review of the record and of the law, I am convinced that such a finding does not require, indeed, in this case, in light of the jury's answers to other interrogatories, does not *justify* such verdict and judgment.

■ Not every finding of negligence on the part of a dealer will support contribution in favor of a negligent manufacturer against a dealer. It is important here to determine what the basis for the jury's finding of negligence against White was. This must be done bearing in mind the admonition of the Supreme Court in Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., et al., 369 U.S. 355 (1962), at page 364, 82 S.Ct. 780 at page 786, 7 L.Ed.2d 798 that: "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way."

There is one view of the facts of this case which makes the jury's answers to special interrogatories consistent: When the Duckworth vehicle left Ford, the jam nut was not properly secured; the condition was one which was at first not noticeable but gradually became worse as the vehicle was driven; Duckworth made complaints to White about the defective operation of the steering but White negligently failed to inspect the steering assembly and correct the defect which

such inspection would have disclosed; because of Ford's failure to properly secure the jam nut and because of White's failure to correct that defect, the accident happened and Duckworth was injured.

■■ Under the foregoing view of the facts (for which there is ample support in the evidence) there is negligence on the part of White but not such as will support a judgment of contribution in Ford's favor. A dealer's negligent omissions may give rise to a cause of action against it by the purchaser, but as between dealer and manufacturer, the responsibility for loss from negligent manufacture is that of the manufacturer and the latter is not entitled to contribution from the former for failure to discover and correct such defect. Birdsong v. General Motors Corporation, 99 F.Supp. 163 (D.C.E.D.Pa.1951); Jarnot v. Ford Motor Company, supra; Restatement, Restitution, § 95; and see discussion in Builders' Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 24 A.L. R.2d 319 (1951). "In the manufacturer-retailer cases, indemnity is a one way street. The manufacturer cannot recover from the dealer for negligence in failing to discover and remedy the defect before selling the item, since the duty to see that it is properly made is on the manufacturer." Davis, Indemnity Between Negligent Tortfeasors, 37 Iowa L. Rev. 517, 527 (1951–2). See also the comments of Chief Justice Holmes in Boston Woven-Hose and Rubber Co. v. Kendall, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781 (1901) and Harper and James, Law of Torts, Section 10.2 at pages 724–5 (1956). The fact that in the instant case the steering assembly was made by someone other than Ford does not relieve Ford of its ultimate responsibility as manufacturer of the finished product. MacPherson v. Buick Motor Co., supra.

■ Ford argues that there is a view of the evidence and of the jury's answers to special interrogatories which will support the verdict and judgment against White, to wit: the jam nut was properly secured when the vehicle left Ford; White loosened the jam nut either in the course of making the vehicle ready for delivery to Duckworth or while attempting to make an adjustment to the steering mechanism during the course of the 1,000 mile inspection.

This view of the case must be rejected. First, it would render the jury's answers to special interrogatories inconsistent. The version advanced by Ford requires a finding that the jam nut was properly secured when the vehicle left Ford's plant. By their answers to interrogatories 1 and 2 the jury placed the responsibility for the loose jam nut on Ford. Acceptance of Ford's version would have served as a complete defense to Ford, not as a basis for contribution against White. Birdsong v. General Motors Corporation, supra. Since there is a view of the facts under which the jury's answers are consistent, Ford's view, which renders them inconsistent, must be rejected. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., et al., supra.

■ A second reason for the rejection of Ford's version is that it is not supported by the evidence. In its case against White, Ford offered Duckworth's case against it. By offering Duckworth's testimony Ford proved that the difficulty with the steering commenced a few days after delivery of the car, that the defect, therefore, existed long before the occasion of the 1,000 mile inspection. Further, Ford itself introduced (albeit in its defense against Duckworth's claim) uncontradicted evidence through White's mechanic and records that White did nothing to the steering during the 1,000 mile inspection. Ford clearly failed in its burden, therefore, to prove that White did anything at the 1,000 mile inspection to create the condition which caused the accident.

The only remaining possibility for implicating White is what White might have done in the course of making the Duckworth vehicle ready for delivery to him. There it was Ford's burden to prove that when the vehicle arrived at White's place of business the jam nut

was secure. To establish that it points to Pruyn's testimony (that *if* a jam nut has been properly secured, it cannot work itself loose, it requires the application of outside force to loosen it) and Duckworth's testimony (that for three days after delivery the steering operated properly) as supporting the inference that the jam nut was secure when the car arrived at White's place of business. One fallacy in that reasoning is that Ford seeks to use Pruyn's opinion to *establish* the very fact which Pruyn *assumed* as the basis for his opinion, i. e. a properly secured jam nut. Another fallacy is that the three days of proper operation of the steering, on which Ford relies to exculpate itself from blame for the loose nut serves equally to exculpate White from blame for loosening the nut on receipt of the car from Ford. In other words, if Ford's position is correct that the three days of proper operation proves that the jam nut was properly secured when it left the Ford plant, those same three days of proper operation would also prove that the jam nut was properly secured when the vehicle left White's place of business and was delivered to Duckworth. Actually it proves neither.[3] The cited portions of the testimony relied on by Ford, therefore, furnish no worthwhile support for the inference which it asks the Court to draw and without which there is no evidence of active intervention by White.

For the foregoing reasons, the Court erred in entering verdict and judgment for contribution against White in the third party proceeding and such verdict and judgment will be set aside.

### ORDER

AND NOW, this 28th day of September, 1962, it is ORDERED that

1. Motion of Defendant, Ford Motor Company, for New Trial, be and it is hereby denied;

2. Motion of Defendant, Ford Motor Company, to Set Aside Verdict and Judgment in favor of plaintiff, be and it is hereby denied;

3. Motion of Third Party Defendant, John B. White, Inc., to Set Aside Verdict and Judgment in favor of Ford Motor Company, third party plaintiff, be and it is hereby granted, and the verdict and judgment thereon in said third party proceeding is vacated.

---

3. It is entirely consistent with plaintiff's expert's explanation of the accident that the jam nut was *not* properly secured although sufficiently tight to hold the steering in proper adjustment for a short period of time.