**GODWIN MADURO, Plaintiff**

v.

**FORD MOTOR COMPANY and**
**RAMSEY MOTORS, INC., Defendants**

Civil No. 591-1969

Municipal Court of the Virgin Islands
Div. of St. Thomas and St. John

July 15, 1970

DANIEL W. AMBROSE, Attorney, St. Thomas, V.I., *for the plaintiff*

FREDERICK D. ROSENBERG, Attorney (BAILEY, WOOD & ROSENBERG), St. Thomas, V.I., *for the defense*

HOFFMAN, *Municipal Judge*

OPINION

This is an action for breach of an implied warranty of merchantability arising from the purchase of a new automobile. After brief testimony was taken on June 24, 1970 the parties stipulated on the record that the case be submitted on the testimony taken and on the April 4, 1970 depositions of Godwin Maduro and Robert Ramsay; the stipulation as to exhibits dated July 6–7, 1970; the so-called examination before trial of Godwin Maduro sworn to March 24, 1970 as limited by counsel on the record; and the pleadings and memoranda of law submitted by the parties.

From a careful review of all of the above it is clear that there exists little dispute between the parties concerning the facts which are relevant to this case. The Court makes the following:

FINDINGS OF FACTS

1. On February 16, 1968 the plaintiff purchased from the defendant, Ramsay Motors, Inc., an agent for the defendant, Ford Motor Company, the manufacturer, a 1968 Mercury Montego for $3847.00.

2. The Plaintiff selected the car himself.

3. At the time of the purchase, it was made clear to the plaintiff by means of a conspicuous writing and by word of mouth that there was an express warranty of "6 months or 6,000 miles, whichever comes first."

4. A number of problems and inconveniences with respect to this new car were encountered by the plaintiff and brought to the attention of the defendant, Ramsay Motors, Inc., during this six month period including trouble with the gas gauge, the steering arm, the alternator, and the brakes. These conditions were, however, substantially repaired by Ramsay Motors.

5. Some 8 1/2 months after purchasing the car and after it had been driven almost 11,000 miles, the plaintiff brought the car back to Ramsay Motors, Inc., complaining about serious transmission trouble.

DISCUSSION

It is the plaintiff's contention that beyond the express warranty of "6 months or 6,000 miles, whichever comes first" there also arose by operation of law an implied warranty which affords coverage to the transmission trouble which seems to be at the heart of the dispute.

In order to determine whether the plaintiff's contention has merit we must carefully consider the appropriate sections of the Uniform Commercial Code adopted in the Virgin Islands and set forth in Title 11A of the Virgin Islands Code for it is this Act which governs the present transaction. The sections with which we are primarily concerned are 2–314 Implied Warranty: Merchantability; 2–315 Implied Warranty: Fitness for Particular Purpose; 2–316 Exclusion or Modification of Warranties; & 2–317 Cumulation and Conflict of Warranties Express or Implied.

At the outset, we will dispose first with the plaintiff's contention that there was an implied warranty of fitness for a particular purpose under section 2–315 since the car was to be used as a taxi. Section 2–315 Implied Warranty Fitness for Particular Purpose, states that:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

This section does not appear to be applicable to the present case. It does not appear that the plaintiff actually relied "on the seller's skill or judgment to select or

furnish suitable goods". First of all, it appears that the plaintiff selected his own car. Secondly, section 2–315 was probably not intended to cover situations such as this. The "particular purpose" to which section 2–315 refers is a specific use that a given buyer is concerned with (such as shoes to go mountain climbing in—see section 2–315, comment 2). It is not concerned with the ordinary purposes for which certain goods are normally used. Here the car is still going to be used for transportation. The fact that the driver intends to charge people for riding in it does not change its basic use.

The pertinent provisions of the sections we are primarily concerned with are set forth as follows:

2–314 Implied Warranty: Merchantability

(1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

    (2) Goods to be merchantable must be at least such as . . .

      (c) are fit for the ordinary purposes for which such goods are used. . . .

2–316 Exclusion or Modification of Warranties

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous. . . .

    (3) Notwithstanding subsection (2)

      (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty. . . .

2–317 Cumulation and Conflict of Warranties Express or Implied

Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall de-

termine which warranty is dominant. In ascertaining that intention the following rules apply:

(c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

■ ■ As section 2–314 makes clear, unless excluded or modified, there arises by operation of law in every sale within the Act by a merchant seller, an implied warranty of merchantability. It is the plaintiff's contention that beyond the express warranty of "6 months or 6,000 miles, whichever comes first" there also existed this implied warranty of merchantability which was sufficient to cover the transmission trouble. Whether or not an implied warranty of merchantability on a new car is sufficient to cover transmission difficulties experienced approximately eight months after purchase is unnecessary to decide because under the present set of facts no implied warranty of merchantability arose. This is because under section 2–316(3)(a), this warranty was plainly excluded by the express warranty "6 months or 6,000 miles, whichever comes first." This warranty was written boldly across the sales invoice which was presented to the plaintiff before the sale was consummated and as the record shows, it was also verbally brought to his attention at this time. It was evident from the very nature of the language used that the only warranty the purchaser was to receive was this warranty and if anything major were to go wrong with the car the buyer could only hope that it would occur during this limited period, otherwise he would not be covered. This was the nature of the risk the buyer assumed when he entered the contract.

■ The purpose of section 2–316 was not to set forth particular boiler plate language which parties must use at their peril in order to effectuate a certain end result which both contemplate. Comment 1 to section 2–316 in explaining the true purposes of this section, states that 2–316

430

"seeks to protect the buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." Here there is no element of unfair surprise, the buyer was fully apprised of the limited nature of his warranty at the time of purchase. No attempt was made on the part of the seller to hide or conceal the limited nature of this warranty.

Even if it were held that the express warranty given the plaintiff was not sufficient under section 2–316 (3) (a) to exclude the warranty of merchantability, certainly this warranty was excluded by virtue of the first sentence of section 2–317. As comment 2 of that section states, "The rules of this section are designed to aid in determining the intention of the parties as to which of inconsistent warranties . . . shall prevail."

The case of Henningsen v. Bloomfield Motors, 32 N.J. 358, set forth in 75 ALR2d 1, on which the plaintiff relies heavily, is inapposite. In that case, ten days after the plaintiff purchased a new car there was a sudden failure in the steering mechanism which caused the car to leave the highway where it was being carefully driven and resulted in severe injuries to the plaintiff's wife. The Court there held that an express warranty by the manufacturer limiting its liability to the mere replacement of defective parts was void as a violation of public policy.

Indeed, the Uniform Commercial Code recognizes this principle. Section 2–719 (3) states:

Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable. . . .

The case of Duckworth v. Ford Motor Company, 211 F.Supp. 888 (1962), relied on by the plaintiff, is also not on point. The facts in Duckworth are quite similar to those in the Henningsen case. In Duckworth, the plaintiff was seriously injured approximately one month after the purchase of a new car when the steering assembly suddenly failed causing the plaintiff's car to leave the road and strike a utility pole. In the course of the opinion in that case, the Court did say on page 891:

There was in this case a written contract which purported to embody the entire agreement between the parties, but it did not specifically exclude the warranty of merchantability hence that warranty was in effect.

However, what the terms of the written contract were in Duckworth and what the circumstances surrounding the execution of that contract were are not even mentioned by the Court. It would be inappropriate for this Court to speculate as to what they were.

It is important to recognize that we are not dealing with a situation involving personal injuries arising from a sudden and unexplained malfunction in an automobile after the warranty period has elapsed. In such a case Section 402A of the Restatement of Torts, 2nd might be applicable. Here we are concerned solely with warranties and the manner in which they may validly be modified or disclaimed under the Uniform Commercial Code.

From the foregoing facts and discussion, the Court, in summary, makes the following:

CONCLUSIONS OF LAW

1. That no implied warranties arose beyond the express warranty of "6 months or 6,000 miles, whichever comes first."

2. That the defendants were not obligated under the express warranty to repair the malfunctioning transmis-

sion when that condition was not brought to their attention until more than two months beyond the expiration of the warranty period.

3. That the defendants were not otherwise in breach of contract.

4. That the defendants are entitled to judgment against the plaintiff dismissing the complaint.

Let defendants' attorney after taxing costs on notice to plaintiff's attorney submit judgment in accordance with the above. Each party however to bear its own attorney's fee.