# Moon *v.* First National Bank of Benson, Appellant.

*Bailment—Banks and banking — Safe-deposit box — Robbery— Due care—Negligence.*

1. A contract between a bank and a person to whom it leases a safe-deposit box is a bailment for hire.

2. In such bailment there is an implied undertaking that the bailee will take reasonable and ordinary care of the bailor's property.

3. What constitutes ordinary care or diligence necessarily varies with the circumstances, the nature of the subject-matter, the business in which the bailee is engaged and the usages of that particular industry, and is necessarily a question for the jury.

·4. Where a safe-deposit box has been broken open by robbers, and the securities stolen, the customer may recover from the bank where the evidence showed that the bank employed no watchman, that, while the building was electrically lighted, a light was not kept burning during the night, that the building was not equipped with a burglar alarm, system, that a door of the vault had been left unlocked, that the inner gate could be unlocked by merely reaching between the rods, and that neither door of the vault was burglar proof.

5. The fact that plaintiff was aware of the condition of the vault is immaterial, and especially so where it appears that he relied on the bank's assurances of safety, and that his securities would be protected by an increase of the bank's burglar insurance.

6. The bank was bound to adopt such measures to protect plaintiff's property as were ordinarily taken by banks under similar circumstances.

Argued September 28, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 69, March T., 1926, by defendant, from judgment of C. P. Somerset Co., May T., 1925, No. 182, on verdict for plaintiff, in case of Ira J. Moon v. First National Bank of Benson. Affirmed.

Assumpsit for value of securities stolen from plaintiff's safe-deposit box. Before BERKEY, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $16,321.13. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Charles H. Ealy,* with him *Charles F. Uhl,* for appellant.—The relation between a bank and the renter of a safe-deposit box is usually defined to be that of bailee for

hire and bailor: National Safe Deposit Co. v. Stead, 250 Ill. 584; Webber v. Bank, 66 Cal. App. 29; Young v. Bank, 150 Tenn. 451; Reading Trust Co. v. Thompson, 254 Pa. 333; Bowser v. Bank, 5 Pa. D. & C. 649. And the bailee is bound to use ordinary care in keeping the property entrusted to it: Cody v. Venzie, 263 Pa. 541.

If plaintiff "knew and acquiesced" in the kind and degree of care and protection afforded by the bank for the compensation which he was paying, surely he cannot now complain: White v. Bank, 4 Brewst. (Pa.) 234.

*Clarence L. Shaver,* with him *Norman T. Boose* and *Budd B. Boose,* for appellee.—The question of defendant's negligence was for the jury: Lancaster Co. Nat. Bank v. Smith, 62 Pa. 47; Erie Bank v. Smith, Randolph & Co., 3 Brewst. 9; First Nat. Bank of Carlisle v. Graham, 85 Pa. 91; Safe Dep. Co. of Pitts. v. Pollock, 85 Pa. 391; Conway Bank v. Ex. Co., 90 Mass. 512.

OPINION BY MR. JUSTICE FRAZER, November 22, 1926:

Plaintiff sued to recover the value of securities belonging to him and stolen by burglars from his safe-deposit box in defendant's bank. The liability of defendant was based on the theory of negligence in failing to exercise due care, as bailee for hire, to provide a reasonably safe place for keeping plaintiff's property. The jury found for plaintiff and from judgment entered on the verdict defendant appealed.

Plaintiff was a depositor in defendant's bank and, previous to the burglary, rented one of its safe-deposit boxes in which he kept various papers, bonds and other securities. The bank is located at Holsopple, in Somerset County, a small country town with a population in the neighborhood of four or five hundred persons. At the time of the loss the streets of the town were electrically lighted, but no night watchman or other police protection was provided by either the municipal or bank authorities. The windows of the bank were protected

by iron bars three-eighths of an inch in diameter attached to the window frame and located six inches apart. The vault, in which the securities belonging to plaintiff and others were kept, was built with walls twenty-two inches thick, the entrance being protected by three doors or gates, the outer door being constructed of soft steel three-sixteenths to one-fourth of an inch thick, increasing to about one-half of an inch where the lock was attached. The middle door consisted of a thin iron plate split in the middle and swinging on hinges from the sides of the vault, and the inner door or gate, the one commonly used during banking hours, while the outer doors remained open, was constructed of separated upright rods and closed with a spring lock. The boxes used by depositors, one of which plaintiff rented, were arranged inside the vault, which also contained the steel safe in which defendant kept its funds and securities. The deposit boxes were opened by two keys, one of which was kept by the depositor and the other, a master key, remained in the possession of the bank, the presence of both keys and a bank official being required to secure access to the contents of the box.

After effecting an entrance through a window by sawing one of the iron bars, the burglars drilled an opening in the vault door, over a small bolt connecting with the combination lock, and by cutting this bolt released the combination from the mechanism which permitted the door to operate free from the lock and allow entrance into the vault. The safe in which the bank kept its money and securities was not disturbed, and the only valuables taken were such as were found loose in the vault and those contained in the boxes of depositors, which were forced open by the burglars.

As tending to show lack of reasonable care, plaintiff offered evidence that the bank employed no watchman; that, while the building was electrically lighted, a light was not kept burning during the night; that the building was not equipped with a burglar alarm system; that

the middle door of the vault had been left unlocked; that the inner gate could be unlocked by merely reaching between the rods, and that neither door of the vault was burglar proof.

Under the conditions indicated by the foregoing testimony, the court below properly charged that defendant owed to plaintiff the duty of exercising such care as ordinarily careful and prudent persons would exercise in the same or similar business, and that if the jury found defendant failed to exercise such care, plaintiff was entitled to a verdict for the amount of his loss.

The contract between the parties was a bailment for hire, and, consequently, for the mutual benefit of both (Reading Trust Co. v. Thompson, 254 Pa. 333, 337); in such case there is an implied contract that the bailee will take reasonable and ordinary care of property the subject-matter of the bailment: Cody v. Venzie, 263 Pa. 541, 546. What constitutes ordinary care or diligence, necessarily varies with the circumstances under which the bailment is made, the nature of the subject-matter, the business in which the bailee is engaged, the usages of that particular industry, and is necessarily a question for the jury: Lancaster County Bank v. Smith, 62 Pa. 47, 54; Erie Bank v. Smith, 3 Brewst. 9, 16; Safe Deposit Company of Pittsburgh v. Pollock, 85 Pa. 391, 393.

The fact that plaintiff was aware of the conditions under which his securities were kept, and without objection permitted them to remain in the bank, does not prevent recovery. We deem it unnecessary, under the facts here involved, to enter into a discussion of the extent to which the doctrine of estoppel or contributory negligence should apply in cases of bailment for hire. The contract here was one of rental of a safe-deposit box in consideration of the payment of a fixed amount by plaintiff at stated periods. Defendant accepted from time to time the compensation provided for, and undertook to perform the trust and by so doing there resulted

an obligation on its part to exercise the degree of care and diligence generally given by other banks similarly situated. Plaintiff had no control over the manner in which the box containing his securities was kept and guarded by defendant, or of the kind and quality of doors and locks or other safety devices attached to the vault; these details were entirely for defendant to determine. On a question being raised concerning the safety of plaintiff's property, and the advisability of transferring it to another bank, he was assured by the officers of defendant that his securities would be fully covered and protected by defendant increasing its burglar insurance. Plaintiff had a right to rely on this assurance of safety and to assume defendant would take such precautions to protect his property as were ordinarily taken by banks under similar circumstances, and was not required to make a personal investigation of the methods adopted by defendant in performing this duty.

Appellant also assigns for error portions of the charge and rulings on testimony. These assignments are without merit and a discussion of them seems unnecessary.

The judgment of the court below is affirmed.