## Gabel *v.* 1528 Walnut St. Bldg. Corporation, Appellant.

Argued October 10, 1946. Before RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (BALDRIGE, P. J., absent).

*Michael A. Foley,* for appellant.

*B. Nathaniel Richter,* with him *Richter, Lord & Farage, Joseph Conwell, Jr.,* and *Pepper, Bodine & Stokes,* for appellee.

OPINION BY ROSS, J., January 17, 1947:

This is an action in trespass brought to recover damages for injuries sustained by the plaintiff as the result of a fall in an elevator on the twentieth floor of a building owned and operated by defendant company, known as 1528 Walnut Street Building in the city of Philadelphia. The jury returned a verdict for the plaintiff, the lower court refused defendant's motion for judgment n. o. v., and this appeal followed. The only question in the case is whether or not the plaintiff as a matter of law was contributorily negligent.

It is only in a clear case where the evidence is such that reasonable minded men can unite in the conclusion that a victim of an accident was negligent that a court is justified in declaring him negligent as a matter of law. *McCracken v. Curwensville Borough,* 309 Pa. 98, 163 A. 217; *Stewart v. Pittsburgh,* 157 Pa. Superior Ct. 347, 43 A. 2d 393. The question of contributory negligence cannot be treated as one of law unless the facts and the inferences from them are free from doubt. If there is doubt as to either, the case is for the jury. *Chidester v. Pittsburgh,* 354 Pa. 417, 47 A. 2d 130. The verdict for the plaintiff is a finding that the plaintiff was free from contributory negligence. *Kulka v. Nemirovsky,* 314 Pa. 134, 170 A. 261; *Weismiller v. Farrell,* 153 Pa. Superior Ct. 366, 34 A. 2d 45. The plaintiff, all conflicts having been resolved in her favor, is entitled to have the evidence supporting her verdict considered and all the rest rejected. *Sorrentino v. Graziano,* 341 Pa. 113, 17 A. 2d 373; *Pinto v. Bell Fruit Co., Inc.,* 148 Pa. Superior Ct. 132, 24 A. 2d 768.

The plaintiff was employed in an office on the twentieth floor of defendant's building. On January 18, 1945, at about 5:40 p.m., as she was entering defendant's elevator after it had stopped to receive and was receiving passengers at the twentieth floor, the plaintiff caught her toe on the floor of the elevator and as a result thereof

fell and sustained various injuries. The elevator had stopped with its floor about "two or three inches" above the floor of the corridor from which plaintiff was entering. It is in evidence that there is no difference in color between the edge of the floor, the elevator floor and the space between. Two other passengers who entered the elevator a few feet in advance of the plaintiff were warned by the elevator operator to "watch your step"; this warning was in "a very low voice", was not heard by the plaintiff and was not repeated for her benefit.

The relation between the owner of an elevator for the use of passengers and those carried in it is similar to that between an ordinary common carrier of passengers and those carried by him. *Riland v. Hirshler,* 7 Pa. Superior Ct. 384. A person owning and operating elevators in a building must give to the persons using the elevators the utmost protection which human knowledge, human skill and foresight and care can provide. *Fox v. Philadelphia,* 208 Pa. 127, 57 A. 356. The owner is held to the highest degree of care in the construction, maintenance and operation of its elevator in protecting from danger persons carried thereon. *McKnight v. Kresge Co.,* 285 Pa. 489, 132 A. 575. Everyone to whom a duty is due has a right to assume that it will be performed. *Adams v. Field,* 308 Pa. 301, 162 A. 177. In determining whether or not the victim of an accident is guilty of contributory negligence it must be borne in mind that the victim had a right to assume within reasonable limits that the party whose negligence primarily caused the injury would perform his duty. *Murphy v. Bernheim & Sons, Inc.,* 327 Pa. 285, 194 A. 194.

A witness for the plaintiff testified as follows: "The light is behind you in the hallway. The lights are dim in the elevator, so that when you are walking forward there isn't any light directly on the step into the elevator." Question: "How about this dark space between

the elevator floor and the floor of the building itself, does that have any effect upon your visual capacity of that variation of elevation?" Answer: "Yes, because it is not noticeable. There isn't any light on the ground you are walking toward, with the light behind you." Another witness testified as follows: Question: ". . . With this light coming from the rear what effect, if any, would it have on the lighting in front of you as you waited for the elevator to come?" Answer: "It would cast a shadow." It was also testified as follows by a witness for the plaintiff: Question: "Now, when the elevator would stop at a point two to two and a half inches above the level of the floor, as you stood outside the elevator could you tell that that elevator floor had not stopped level with the floor of the building just by looking at it?" Answer: "No, you wouldn't notice it because this black band is in front of the elevator." And again: Question: "How about this dark space between the elevator floor and the floor of the building itself, does that have any effect upon your visual capacity of that variation of elevation?" Answer: "Yes, because it is not noticeable. There isn't any light on the ground you are walking toward with the light behind you."

With these existing physical conditions—the lighting, whether it be termed *dim,* or *uncertain,* or *confusing,* and the similarity of the coloring of the floor of the corridor and the floor of the elevator—the plaintiff attempted to enter the waiting elevator. The door was open, an invitation to enter where other passengers were riding, including two people who had entered the elevator at the twentieth floor immediately ahead of the plaintiff. She had the right to assume within reasonable limits that the defendant would perform the duty it owed to her of keeping its elevator safe for passengers and of giving warning of any failure to maintain or operate it in such condition of safety. There was no apparent reason for apprehension and no warning had

been given to her. Her caution would be relaxed because, as stated by the present Mr. Chief Justice MAXEY in *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285, 194 A. 194, supra, at page 288: "One's caution becomes intensified when he is conscious of danger; it is relaxed when he has no reason for apprehensions. When elevators first came into use persons using them or approaching elevator shafts did so with misgivings, such as those of passengers on railroad trains when the latter first came into use. Nowadays, elevators and elevator shafts give rise to no more apprehensions of peril than do railroad trains to those who use them. . . . The fact that elevator shafts are no longer places of probable danger is a fact which individuals carry in their subconscious minds when they approach them and therefore they do not normally approach them with the utmost degree of caution. . . . This does not excuse him from taking care but it decreases the degree of care the law imposes on one who would escape the imputation of negligence." The plaintiff testified as follows: "I looked down. . . . I just saw the elevator floor. It looked as though it were on the level to me and I stepped in in back of Mr. and Mrs. Smith. . . . I thought the elevator floor was on a level with the hall floor and I stepped in. . . . I stubbed my right toe and . . . felt myself falling." Under the evidence in this case the question of plaintiff's contributory negligence—whether or not she should have observed the variation in elevation and thus avoided injury—was for the jury to determine.

In *Lewis v. Duquesne Inclined Plane Co.*, 346 Pa. 43, 28 A. 2d 925, relied upon by the appellant, the plaintiff on a clear afternoon tripped while leaving an inclined plane car which had stopped with its floor three inches below the level of the platform and she claimed that she was prevented by shadows from seeing that the car had not stopped level with the platform. In holding her to have been contributorily negligent as a matter of

law the Supreme Court said: "It is obvious she could have seen this condition if she had looked." In that case the passenger was deceived by shadows but in the instant case the plaintiff was deceived by her sense of sight. It was admitted in the *Lewis* case that the lighting was adequate and under the evidence in this case the jury might well have found the lighting to have been inadequate. Furthermore, reasonable care would require one to be more alert to possible danger on entering or leaving a manually operated inclined plane car than an electrically operated automatic elevator in a modern office building, an elevator that was described by a witness for the defendant as "the best elevator in the city for stopping level" . . . "a foolproof elevator" . . . "It is the best I've seen". The cases are clearly distinguishable.

Judgment affirmed.