Rubin *v.* Goldner, Appellant.

Argued November 11, 1954. Before STEARNE,
JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Jos. P. Flanagan, Jr.,* with him *Herbert Somerson, Frederick A. VanDenbergh, Jr.,* and *Saul, Ewing, Remick & Saul,* for appellants.

*Richard W. Hopkins,* with him *Thomas Raeburn White, Jr.,* and *White, Williams & Scott,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 3, 1955:

The plaintiff in this case brought an action of assumpsit for the value of goods destroyed by fire in the warehouse of the defendants in which the plaintiff had deposited them for safekeeping. The jury returned a verdict of $4,373.80. The lower court, having refused motions for a new trial and for judgment n.o.v., this appeal followed.

It is not necessary to quote extensive authority for the proposition that a warehouseman who accepts the custody of goods for storage on a compensation basis is responsible monetarily to the owner if, because of lack of care on his part, those goods are lost, destroyed or damaged.\* The only question before us on this appeal is whether the record substantiates the verdict of the jury that the negligence of the defendants' employees caused the plaintiff's property to be destroyed by fire.

The warehouse involved was a rectangular one-story building approximately 250 feet long and 55 feet wide. The rear of the building, measuring 55 x 30 feet, was

---

\* *Moon v. First Nat. Bank of Benson,* 287 Pa. 398.

separated from the rest of the building by a Celotex non-fire-resistent wall and was used as an auto repair shop by the defendants. On the morning of April 15, 1952, several of the defendants' employes were working in this repair shop on the gasoline tank of a truck into which some water had penetrated. The chief mechanic, Alfred J. Fiocca, decided to get to the gasoline, with the object of draining the tank, by drilling through the plug, which apparently was corroded and did not respond to a monkey wrench's pull. When sparks from the electric drill came into contact with the gasoline, the inevitable happened. Flames leaped to the roof members directly above the repair shop area, shot along the ceiling into the warehouse proper, dropped burning embers over stored and piled-up material, and precipitated a conflagration of such proportions that four alarms brought several companies of fire fighters who fought the all-engulfing blaze from 10:20 a.m., to 3:34 p.m., by which time the plaintiff's goods were reduced to cinders.

Could a jury say that it was negligence for a worker to enter into a reservoir of gasoline with a whirling electric drill, known to produce flashes of live fire? It would be trying credulity to an intolerable degree to assume that a jury could *not* find negligence in so imprudent an act. Sawing off the limb of a tree while sitting astride it is a comparatively safe operation when contrasted to introducing burning sparks into so inflammable and combustible a liquid as gasoline.

Nor can it be said that Fiocca, the defendant's employee, was an amateur around gasoline-driven vehicles. He had been an auto mechanic for 15 years. He admitted that he knew that what he was about to do was a "touchy job." More than that, he actually anticipated a fire. He directed a truck driver, Bell, to stand by with a fire extinguisher. This assistant in

the operation proved to be something less than helpful when the first tongue of flame leaped from the gasoline pouring from the pierced tank. Concluding that so far as he was concerned discretion was the better part of valor he tossed away the fire extinguisher and took to his heels.

Fiocca's own clothing caught fire and he also fled. Defendants' counsel advances the novel proposition that if the worker with the fire extinguisher had stood his ground, the fire would have been smothered and the plaintiff's goods would have been saved. But this argument does not exculpate the defendants from responsibility. In fact, the employee who threw away the extinguisher could equally have been found guilty of negligence with the employe Fiocca, so that his negligence, as well as Fiocca's could have been imputed to the defendants.

It is contended further in the appeal that the plaintiff failed to show that the custom and usage of other warehousemen engaged in similar occupations differed from the defendants' operations. There was no obligation on the plaintiff to show what other warehousemen did. In *Price v. New Castle Refractories Co.,* 332 Pa. 507, 512, we said: "While custom or practice prevailing in a particular business in the use of methods, machinery and appliances is a most important factor in determining the question of negligence, ultimately it is for the jury to find whether under all the evidence—particularly where, as in the present case, it consists of oral testimony—the defendant was negligent."

In the case of *Maize v. Atlantic Refining Co.,* 352 Pa. 51, this Court quoted with approval an excellent statement on this subject by the Supreme Court of Wisconsin, namely, " ' "If the act in question is obviously dangerous, then evidence of custom is inadmissi-

ble, because custom cannot change the quality of an act . . . Hence, when its quality clearly appears from the act itself, there is no need to invoke the aid of custom to determine it." ' "

Defendants' counsel contend further in their brief that: "There was not one iota of evidence that the precautions were insufficient or that the conditions of light and darkness or weather would have permitted the job to have been done elsewhere than in the garage." The jury were not only justified in finding that the defendants' mechanic was grossly negligent in sinking a sparking electric drill into a tank of gasoline but also that there was geographical negligence in the very locale in which the operation was performed. Since the mechanic foresaw the possibility of fire, the most elementary prudence should have dictated that the truck be taken outside where, of an April forenoon, light and weather conditions would have assisted rather than hindered the expeditious and efficient performance of the dangerous task.

During the trial the plaintiff introduced evidence of violations, on the part of defendants, of certain building and fire ordinances. This is assigned as error. The learned Trial Judge specifically, emphatically and repeatedly instructed the jury that any noncompliance by the defendants with fire or building codes did not make the defendants liable unless those violations were "the efficient and proximate cause of the fire."

The record shows that the case was well tried by counsel on both sides, that it was presided over most fairly and ably by a veteran trial judge and that the issue of fact was submitted with undeviating impartiality to the jury. We see no reason to disturb the resulting verdict, and, accordingly the Judgment entered in the court below is affirmed.