Aquadro, Appellant, *v.* Crandall-McKenzie and Henderson, Incorporated.

Argued November 19, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, and CARR, JJ. (RHODES, P. J., and ERVIN, J., absent).

*Samuel Avins,* for appellant.

*Frank R. Bolte,* for appellee.

OPINION BY WRIGHT, J., December 28, 1956:

Mrs. Mathilda Aquadro brought suit in assumpsit to recover the value of certain rugs which she had entrusted to the defendant for dry cleaning, and which were returned in damaged condition. Following a jury verdict in favor of the plaintiff, the court en banc granted a new trial. The plaintiff has appealed.

At the trial appellant testified that she sent five green wool rugs to appellee, specifying that they be dry cleaned for the purpose of removing surface soil. When the rugs were returned they were marked with tan stains which substantially destroyed their value. It was agreed that there were no stains visible to the eye when the rugs were originally received at the plant. Appellee endeavored to show that the rugs were cleaned in the customary manner, and with proper materials. Specifically, appellee offered testimony to the following effect. After the soil was flushed out by a dry solvent, termed naptha, the rugs were hung in a drying room where air was passed through them for thirty minutes at a temperature of 120° to 140° in order to remove the naptha vapors. This degree of heat caused sugar in the rugs to caramelize so that stains appeared. The sugar could have come from hard or soft drinks, tea or coffee, which had been spilled on the rugs. Wiping up such drinks after spillage would not remove all the sugar, since only the top nap would be reached. To remove the sugar it would be necessary to completely soak the spots, or to use a wet cleaning process. However, with such a method there is danger of color running, shrinkage, and removal of sizing. Appellee conceded that, if the rugs were atmospherically dried, the sugar would not caramelize, but took the position that this was not the accepted method used in dry cleaning plants since it required an extremely large area over

which to spread the rugs and would take an impractical length of time for the air to complete the drying process. The caramelized sugar stains, once they appeared, could not be removed by any cleaning process.

In his charge the trial judge aptly remarked: "I am sure . . . we all are learning something about rug cleaning". He reviewed the evidence, stated the rules of liability as between bailee and bailor, and submitted to the jury the question of the bailee's negligence. Neither party has raised any question as to the propriety of the charge. It should also be noted that appellee did not ask for binding instructions. In its opinion awarding a new trial the court en banc said: "The plaintiff in this case proved that the goods were damaged and rested. There was no evidence on the part of the bailee disclosing negligence. The plaintiff bailor did not go forward and prove negligence, therefore, a verdict could not be sustained".

In the leading case of *Schell v. Miller North Broad Storage Co.*, 142 Pa. Superior Ct. 293, 16 A. 2d 680, Judge (later Mr. Justice) PARKER said: "When the bailee returns the goods in a damaged condition or fails to return them at all the law requires him 'to give an account of the matter' or assume responsibility for the loss. 'But when he gives an account, although it may be a general one, of the cause, and shows the occasion of the injury, it then devolves upon the plaintiff to prove negligence, unskillfulness, or misconduct' *. . . If the bailee in endeavoring to exculpate himself by describing the manner of the loss, discloses negligence, of course the bailor is not required to proceed farther . . .*" (italics supplied).

The most recent pronouncement on the subject appears in *Moss v. Bailey Sales and Service*, 385 Pa. 547, 123 A. 2d 425, wherein Mr. Justice JONES said: "A

bailor makes out a prima facie case against his bailee for hire for the recovery of the value of unreturned bailed property by showing his delivery of it to the bailee and the latter's failure to redeliver it upon the bailor's due demand therefor. It then becomes the bailee's duty, if he would escape responsibility for the loss of the bailed article, to show that his failure to redeliver it upon the termination of the bailment was because of its loss by fire, theft or other casualty *free from fault on his own part*. With that done, the burden of going forward with evidence to prove that the loss was due to the bailee's negligence is then upon the bailor. The question that has most frequently arisen in the trial of such litigation is concerned with both the burden and the order of proof rather than with the law of bailments" (italics supplied).

Where there is a doubt as to the inference to be drawn from the evidence, the question of negligence is properly for the jury. *Olson v. Swain*, 163 Pa. Superior Ct. 101, 60 A. 2d 548; *Russo v. Pittsburgh Railways Co.*, 164 Pa. Superior Ct. 396, 64 A. 2d 666. See also *Trostel v. Reading Steel Products Corp.*, 152 Pa. Superior Ct. 273, 31 A. 2d 909. Negligence is the doing of that which a reasonably prudent man would not do under the circumstances, or the failing to do that which a reasonably prudent man would do under the circumstances: *Schentzel v. Philadelphia National League Club*, 173 Pa. Superior Ct. 179, 96 A. 2d 181. The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm resulting from his act: *Dahlstrom v. Shrum*, 368 Pa. 423, 84 A. 2d 289. What constitutes ordinary care or diligence varies with the circumstances under which the bailment is made, the nature of the subject matter, the business in which the bailee is engaged, and the usages

of that particular industry, and is necessarily a question for the jury: *Moon v. First National Bank of Benson*, 287 Pa. 398, 135 A. 114. Customary methods or conduct do not furnish a test which is controlling on the question of an actor's freedom from negligence, or fix a standard by which negligence is to be gauged: *Donnelly v. Whittaker Co.*, 364 Pa. 387, 72 A. 2d 61. While use of customary methods, machinery or appliances is evidence of an exercise of reasonable care, such usage does not furnish a conclusive test on the question of negligence: *McAdoo v. Autenreith's Dollar Stores*, 279 Pa. 387, 109 A. 2d 156. See also *Rubin v. Goldner*, 380 Pa. 240, 110 A. 2d 237.

In determining whether there was evidence in the instant case to justify the finding of negligence on the part of appellee we must consider the oral testimony in its aspect most favorable to the verdict and reject all inconsistent inferences: *Hankins v. Mack*, 364 Pa. 417, 72 A. 2d 268. Here the appellant proved the bailment and the return of the bailed property in a damaged condition. Appellee then introduced evidence showing the manner in which the rugs were cleaned. Considerable testimony was given dealing with caramelized stains resulting from sugar spots. Lloyd E. Jackson, a chemical engineer called by appellee as an expert, testified that sugar stains were among the most common found in the cleaning industry. John W. Crandall, appellee's President, testified: "The fact of the matter is, because this [sugar stain] is so common in clothing and rug cleaning, that this pamphlet happened to be put out by the National Institute of Rug Cleaning for distribution throughout the country". Mr. Crandall also testified that, after the damage occurred, he sent a copy of this pamphlet to Mrs. Aquadro. Mr. Crandall and Edson D. Eldridge, foreman of appellee's

rug cleaning department, both testified that the cara-melization was caused by the "cooking" or heat drying of the rugs, and that if the rugs had been allowed to dry without heat the stains would not have appeared. Jackson, the expert, agreed that this was so. With this information, which was well known to appellee but was not disclosed to appellant, the rugs were "cooked" without any effort having first been made to determine whether there were sugar stains, or to remove stains which might have been present. Yet witness Crandall testified: "If we had known it was there we could have taken it out". And witness Jackson was asked the following question: "Before they were returned to the customer, although spotted, the thing to do was call the customer and try and find out what they were". His reply was: "That should have been done before they were dry cleaned".

Our review of the record leads us to the conclusion that the jury was warranted in finding from the evidence that appellee was negligent in its handling of this bailment. We cannot agree with the court en banc that "the defendant explained the loss without disclosing negligence". An order granting a new trial may be reversed where it appears that such action constituted an abuse of discretion: *Jones v. Williams*, 358 Pa. 559, 58 A. 2d 57. See also *Martin v. Arnold*, 366 Pa. 128, 77 A. 2d 99. Where the facts have been established by the jury in conformity with the testimony, plaintiff's claim must be disposed of by the application of the appropriate legal principles, and it is error to grant a new trial: *Tucker v. Tucker*, 370 Pa. 8, 87 A. 2d 650.

Order reversed with directions to the court below to enter judgment on the verdict.