## Fore v. United Natural Gas Company, Appellant.

Argued October 2, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused February 18, 1970.

500

*John F. Potter,* with him *MacDonald, Illig, Jones & Britton,* for appellant.

*Cyril T. Garvey,* with him *Evans and Garvey,* for appellees.

OPINION BY MR. JUSTICE EAGEN, January 9, 1970:

On January 27, 1967, a one-story, brick house in Farrell, Pennsylvania, owned by John B. Fore and his wife, Idell, was destroyed by a gas explosion and fire. Alleging that the negligence of an employee of the United Natural Gas Company (Gas Company) was a proximate cause of the explosion, the Fores instituted this action seeking damages. At trial, the jury returned a verdict in favor of the plaintiffs. Following the denial of motions for judgment notwithstanding the verdict or a new trial, and the entry of judgment on the verdict, the defendant Gas Company appealed. We affirm.

From the evidence, the jury was warranted in finding the following facts:

Two days before the explosion, an employee of the defendant Gas Company came to the Fore house in the course of his employment to read the meter. Upon entering the building, he detected an odor of gas which caused him to check for leaks in the vicinity of three gas appliances located in the house. Admittedly, he did not check all the gas lines in the house for leaks. The employee then informed Mr. Fore that he found two leaks; one in the gas water heater connection, and another in the gas furnace connection, both of which should be repaired without delay. Mr. Fore said that he would make the necessary repairs. The defendant's

employee then turned off the supply of gas into the house at the meter, but did not turn it off at the curb line. Later, he filed a routine report with his employer which noted that he had discovered a gas leak in the Fore house at the water heater connection, but failed to mention that he had also found a second leak at the gas furnace connection.

Mr. Fore and his son promptly repaired the two leaks called to their attention by the defendant's employee, as before related. They then turned the gas supply into the house back on and tested the couplings they had repaired for leaks by holding a lighted match in the area. No further leaks were evident. Mr. Fore and his son then returned to their residence at another address. Two hours later, the son returned to the house involved to light the furnace and the hot water tank. Shortly thereafter, the explosion occurred. The source of the gas which caused the explosion was a leak in a pipeline in the house which the defendant's employee had failed to discover or call to the Fores' attention. The safe practice standards published by the American Gas Association and accepted generally in the gas distribution industry suggest, inter alia, that if a gas leak is discovered by a gas company, it should "make sure that all possible sources of escaping gas have been located."

In this appeal, the defendant does not maintain that the evidence at trial was insufficient to sustain the verdict. It does, however, contend that certain trial errors require the grant of a new trial. We conclude that these assignments of error are without merit and that only one needs discussion.

The defendant's basic contention is that the trial court erred in its charge to the jury concerning the duty of the gas company under the circumstances. In relevant part the court said: "Once the company, that is the gas company, knows that the consumer's lines

are not safe, it has the duty to require the lines to be repaired or else shut off the gas at the curb. The responsibility of a gas company arises from the knowledge of a dangerous condition and not by reason of the condition."

In this connection, the defendant first argues that it was not required to turn off the gas supply at the curb, but only at the meter. Its argument on this score is novel if not convincing. It first asserts that there is a direct relation between where its area of responsibility for repair and maintenance ends and where the gas should be turned off once there is notice of leaks in the consumer's lines. It then asserts that its duty to turn the gas off at the *curb* was imposed at a time when its area of responsibility for repair and maintenance ended at the curb. The Gas Company next concedes (without citing any authority for the proposition) that its general area of responsibility now embraces not only it own gas mains but also the service line extending from the curb to the meter. Thus, it argues, since its area of responsibility now extends up to the meter, its duty should be to turn off the gas at the same point. But, as the trial court instructed the jury, the negligence of the defendant does not stem from the condition itself or the defendant's failure to repair, but rather from the defendant's knowledge that a very dangerous condition existed and its failure to take every reasonable precaution to protect the Fores and others from harm.

Moreover, the duty of a gas company under the peculiar circumstances where it becomes aware of leaks in the customer's lines is not based on a strict determination of areas of responsibility but on the very real consideration of where the flow of gas can most effectively be stopped by the gas company—where can it best "avoid the danger that might result." When the company can with one effective step prevent more gas

from entering the consumer's home and it can do this with little inconvenience to itself and with complete finality, then the company's argument that its duty is satisfied by merely turning off the gas at the meter—where a multitude of factors may prevent the termination of gas flow—carries little weight.

Next, the defendant argues that assuming the trial court correctly defined its duty, namely, "to require the lines to be repaired or else shut off the gas at the curb," the two duties are disjunctive, and since its employee advised Mr. Fore that repairs were necessary, its duty was completely satisfied, and the jury should have been so instructed.

In the first place, this argument fails to take into consideration the trial evidence that the defendant's employee failed to inform Mr. Fore of the specific leak or leaks which gave rise to the explosion, and also that the employee failed to make a complete check of the gas system in the house which probably would have disclosed this leakage.

The duty which devolves upon a gas company, once it has knowledge of a leak or defect in the consumer's lines, was first announced as dictum in *Windish v. Peoples Natural Gas Co.*, 248 Pa. 236, 240, 93 A. 1003, 1004-1005 (1915), where the court said: "Had the defendant company known that the service line was rusted and corroded to such an extent as to permit gas to escape it would have been its duty either to have caused the service line to be repaired by the person whose duty it was to do so, or to have the gas shut off at the street in order to avoid the danger that might result."

While a cursory reading of this isolated passage might suggest that the duty is purely disjunctive, a closer reading of the case and the two companion cases decided the same day (*Pouder v. Peoples Natural Gas Co.*, 248 Pa. 242, 93 A. 1005 (1915), and *Smith v. Peoples Natural Gas Co.*, 248 Pa. 246, 93 A. 1005 (1915)) exposes the error of such a view.

Immediately after the above quoted language in *Windish*, supra, the court went on to say: "We *fully agree* with the suggestion that the defendant company, even if the duty to repair the service line did not devolve upon it, *could not continue to furnish gas through that service line if known to be defective* without making itself liable in damages for injuries resulting therefrom." (Emphasis supplied.)

Moreover, in the companion case of *Pouder,* supra at 245, 93 A. at 1006, there is additional dictum to the effect that: "If it appeared from the testimony that the defendant company had knowledge of leaks in the service pipe, although it did not have the duty to repair, we would be strongly impressed with the argument of learned counsel for appellants, that it would *at least* have been its duty to shut off the gas at the curb *until* the repairs were made." (Emphasis supplied.)

This is stated even more emphatically in *Conway v. Philadelphia Gas Works Co.,* 336 Pa. 11, 16, 7 A. 2d 326, 328 (1939): "If from the record it appeared that notice had been brought home to the defendant that there was a leakage of gas in the premises occupied by the plaintiffs, then *unquestionably* it would have been its duty to see that the supply of gas into the house was shut off *until* the necessary repairs were made, . . ." (Emphasis supplied.) See also, *Heller v. Equitable Gas Co.,* 333 Pa. 433, 3 A. 2d 343 (1939).

It seems clear that if the facts in *Windish, Pouder* or *Conway* showed that the defendant had notice of the leak and merely notified the homeowner to make repairs, while continuing to transport gas through the defective piping, this Court would certainly have found the defendant negligent.

It seems equally clear that if the defendant had notice that gas was leaking into its consumer's house and merely turned off the gas at the curb without even in-

forming the owner that he should repair his defective piping (thus in no way lessening the potentially dangerous condition), this Court would likewise have found negligent conduct. The point is that in neither situation would the solitary act effectively "avoid the danger that might result."

The gas company has the duty, once it knows or has reason to know of defects in its customer's lines to "have the gas shut off at the curb" until such time as it has "caused the service line to be repaired by the person whose duty it was to do so."

This latter requirement imports more than a duty to simply notify such person of a defect in his line, though it certainly embraces such a requirement. Given the fact that the company does know that there are leaks in the customer's lines, then before it turns the gas back on it must be satisfied that the owner has properly made the repairs.

As we said in *Goodman and Theise, Inc. v. Scranton Spring-Brook Water Service Co.*, 352 Pa. 488, 492, 43 A. 2d 111, 113 (1945) [quoted in *Hemrock v. Peoples Natural Gas Co.*, 423 Pa. 259, 223 A. 2d 687 (1966)]: "[I]f the gas company knows that there are defects in such a pipe, or is in possession of facts which should reasonably inform it that it is unsafe, it then becomes its duty *to investigate the safety of the pipe before it continues to use it for the transportation of gas,* and if it fails in that duty it becomes liable for any resulting accident." (Emphasis supplied.)

Since we conclude that the gas company's duty is not disjunctive and that the company's duty to keep the gas turned off continues until such time as it is satisfied that the repairs have been properly made, it is clear that the instructions to the jury in no way prejudiced the defendant Gas Company.

Judgment affirmed.

Mr. Chief Justice BELL and Mr. Justice POMEROY concur in the result.