**Sukeena v. Michael**

*Albert J. Slap,* for plaintiffs.

*Jackson M. Sigmon* and *Alan M. McFall,* for defendants.

WILLIAMS, *P.J.,* May 14, 1984 — Before the court for disposition are preliminary objections filed by one of defendants — the Lehigh-Northampton Airport Authority (erroneously named as the "Allentown-Bethlehem-Easton Airport" in the complaint; hereinafter referred to as the authority) — to Count one of plaintiffs' complaint in trespass.

The complaint alleges that plaintiffs have suffered severe and permanent injuries, both personal and pecuniary, as a result of the toxic contamination of the wells on their properties. The complaint further alleges that the authority is at least partially responsible for that contamination and proposes liability under four counts — strict liability, nuisance, trespass and negligence. (It is only to the first count that the authority objects.)

Count one charges, inter alia, that the authority should be held strictly liable for any well-water contamination caused by the abnormally dangerous conditions which exist on its premises. More specifically, plaintiffs allege that the authority "has on its property more than 22 buried petroleum storage

tanks, . . . [which] contain in excess of 100,000 gallons of petroleum products". They further allege that the authority's property "contains a former mine hole/dump . . . [which was] filled in with industrial wastes such as oil drums, old cardboard drums, parts of cars and airplanes, and garbage; that the mine hole/dump was directly connected to the groundwater, and that the normal action of groundwater flow has caused, and continues to cause, the petroleum [and pollutants] from the mine hole/dump to contaminate [the plaintiffs'] wells".

It is appropriate at this point to acknowledge that the Authority's preliminary objections are essentially in the nature of a demurrer. Pa. R.C.P. 1017(b)(4). In ruling upon a demurrer, the court must assume that all factual averments in the complaint and all reasonable inferences therefrom are true. McKinney v. State Farm Mutual Insurance Co., 295 Pa. Super. 319, 441 A.2d 1252 (1982). For the demurrer to be sustained, it must clearly appear from these facts and inferences that the law will not permit recovery. Niebauer v. Center City Solid Waste Authority, 59 Pa. Commw. 264, 429 A.2d 1210 (1981). Conclusions of law and unjustified inferences are not admitted, Rose v. Wissinger, 294 Pa. Super. 265, 439 A.2d 1193 (1982), but any doubt as to whether the demurrer should be sustained should be resolved in favor of overruling it. Modesta v. S. E. Pa. Transp. Auth., 300 Pa. Super. 6, 445 A.2d 1273 (1982). The case law in Pennsylvania clearly disfavors demurrers and sustains such objections only in cases which are free from doubt. Duffee v. Judson, 251 Pa. Super. 406, 380 A.2d 843 (1977). The complaint must be examined to determine whether it sets forth a cause of action which, if proven, would entitle plaintiff(s) to relief. Rose v.

Wissinger, supra; Anderson v. Shaffer, 39 Pa. Commw. 636, 396 A.2d 91 (1979).

In applying those standards to the case at bar, a heavy burden is placed upon the authority to show that the plaintiffs cannot recover from the authority under a strict liability theory, even if the facts as averred are correct. The authority acknowledges that burden by admitting, solely for the sake of legal argument on the preliminary objections, plaintiffs' factual allegations concerning the mine hole/dump.

The specific issue before us, then, is whether or not the authority, a municipal corporation, can be held strictly liable for injury which is shown to have been caused by the below-ground petroleum storage tanks and/or the filled-in mine hole/dump on its property. Strict liability is a well-settled but complex theory of tort recovery. Both parties have alluded to the Restatement (Second) of Torts, as directive in this area — especially Section 519 et seq., relating to abnormally dangerous activities. Although research has not unearthed Pennsylvania appellate authority which explicitly adopts these amended sections, the Pennsylvania Supreme Court adopted the original Section 519 and 520 relating to strict liability for "ultrahazardous" activities, and the amendments thereto are primarily explanatory rather than expansive. Federhoff v. Harrison Constr. Co., 362 Pa. 181, 66 A.2d 817 (1949); Lobozzo v. Adam Eidemiller, 437 Pa. 360, 263 A.2d 432 (1970).

The Restatement recommends that the court look to a variety of factors in determining whether or not a given activity is an "abnormally dangerous" one. These factors include [the]:

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes."

Restatements (Second) of Torts, §520 (1976). Once the court has determined that an activity is abnormally dangerous under Section 520, the general principal of liability of Section 519 applies.

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

Restatement (Second) of Torts, §519 (1976). This principle is based upon a legal policy that imposes upon anyone, who for his own purposes (not necessarily pecuniary gain) creates an abnormal risk of harm to his neighbors, the responsibility of relieving against that harm when it does in fact occur. Restatement (Second) of Torts, §519 (comment d).

The next step is to determine whether there is any countervailing policy which would weigh against the imposition of liability in a particular instance. For example, if the harm resulting from defendant's abnormally dangerous activity would not have resulted but for the abnormally sensitive character of plaintiff's activity, strict liability will not be imposed. Restatement (Second) of Torts, §524A (1976). Likewise, the rules as to strict liability for abnormally dangerous activities do not apply if the

activity is carried on in pursuance of a public duty imposed upon the defendant as a public officer or employee or as a common carrier. Restatement (Second) of Torts, §521. Such persons could presumably still be liable under theories of negligence or trespass, but public policy demands that they not be held strictly liable for their actions. Section 521 does not, however, express any opinion as to the imposition of liability on persons whose abnormally dangerous activities are not in furtherance of a public duty but are authorized or sanctioned by legislation. Such legislative authorization may, under some circumstances, be interpreted as conferring immunity from strict liability, but that is not always the case.

The first determination that we must make, therefore, is whether or not the authority's "activities" can be deemed to be "abnormally dangerous". Such a determination is the province of the court. Unlike questions of negligence, which are based on a "reasonable man" standard, the imposition of strict liability involves the legal characterization of defendant's activities and should not be left to the jury. Restatement (Second) of Torts, §520, comment 1 (1976); Zangan v. Valecopters, 88 Wash.2d 855, 567 P.2d 218, 221 (1977); Plounde v. Hartford Electric Light, 31 Conn. Sup. 192, 326 A.2d 848 (1974). It is important to realize that the factors set forth in Section 520 are not intended to be exhaustive. Nor are they intended to be independent prerequisites to the imposition of strict liability. The pivotal question is whether, after examining these factors as a whole, the court finds that the risk created by the defendant's activities is so unusual, either because of its magnitude or because of the surrounding circumstances, that it may justify the imposition of strict liability for the resulting harm,

even though the activities are carried on with all reasonable care. The imposition of strict liability is not the proper avenue of recourse when the risk involved in an activity is so great or so unreasonable as to make it negligence per se to carry on the activity at all. If the utility of the activity does not justify the risk it creates, it may be considered to be negligent conduct merely to carry it on, and the rules which govern the imposition of strict liability need not be utilized to subject the defendant to liability. We cannot, on the facts before us, determine that such is the situation at bar. The authority's activities cannot be deemed to be negligent per se at this point in the proceedings. Accordingly, we turn to the various factors set forth in Section 520 of the Restatement, Second, to determine whether the authority's activities can be considered to be "abnormally dangerous", fully cognizant of the fact that Section 520 is intended to be directive only.

The first factors to be considered are the degree of risk involved in the activity and the likelihood that the resulting harm will be great. An activity that is abnormally dangerous ordinarily involves a high degree of risk of serious harm to the person, land or chattels of another. The two factors need not be present in equal degree — strict liability could be imposed on an individual even if his activities involve only a slight risk of very serious harm to others (e.g. nuclear experimentation). We must also look to the nature of the activity itself. Will the exercise of reasonable care eliminate the risk of harm? If so, the matter is not one for the imposition of strict liability. Strict liability involves responsibility for harm resulting from the risk which remains even after all reasonable precautions have been taken by the actor. Further considerations are the extent to which the activity is not a matter of common usage

and the extent to which its value to the community outweighs its dangerous attributes. Lastly, we must take into account the place where the activity is conducted — certain activities could be deemed to be normally dangerous simply by virtue of the location at which they are conducted.

Applying these considerations to the "activities of the authority" in this matter, we cannot find that either activity is an abnormally dangerous one. Although the storage of large quantities of petroleum products is not an activity which is engaged in by a large percentage of the population, it is not an uncommon practice in the air transportation industry. Fuel storage is an indispensable part of the authority's activities, and storage on or near the premises of the airport is clearly preferable. Although adjacent to a residential area, we cannot find the authority's storage of fuel on its property to be abnormally dangerous simply by virtue of that fact. We also note that the storage of large quantities of petroleum products in underground tanks is a statutorily-regulated activity in Pennsylvania (58 Pa. C.S. §451) and, accordingly, an activity that is best monitored by utilizing a liability standard which looks to compliance with due care rather than to liability without fault. The Pennsylvania legislature has determined that this type of activity is sufficiently widespread to impose strict health and safety requirements upon those engaging in it, and the record before us lacks any evidence which could permit us to conclude that compliance with those standards of due care will not eliminate any risk of harm. The mere fact that the legislature has enacted a regulatory statute does not, in and of itself, prevent us from finding that the authority's activities are abnormally dangerous, but in the absence of any Pennsylvania appellate au-

thority on point, we do not so find. Other jurisdictions are split on the issue. Yommer v. McKenzie, 257 A.2d 138 (Md. App. 1969); Hudson v. Peavey Oil Co., 566 P.2d 175 (Or. 1977). It is clear that the law in Pensylvania imposes a high duty of care on those who deal with highly volatile and dangerous substances such as gasoline — a degree of care which is commensurate with the dangerous character of the agency which is handled. Karle v. National Fuel Gas Distribution Corp., 448 F. Supp. 753 (1978); Fore v. United Natural Gas Co., 436 Pa. 499, 261 A.2d 316 (1970); Hemrock v. Peoples Natural Gas Co., 423 Pa. 259, 223 A.2d 687 (1966); Goodman & Theise v. Scranton Spring-Brook Water Service Co., 352 Pa. 488, 43 A.2d 111 (1945). But those cases specifically direct that the standard of care required of a company which manufactures and/or distributes gas is not absolute; the measure of liability is not that of an insurer but that of a reasonable person engaged in the business and knowledgeable as to the grave risks involved. Hemrock, supra. Accordingly, the authority's demurrer to that portion of plaintiffs' Count one which relates to the underground storage of gasoline and petroleum products is granted.

We are also faced with a determination as to the nature of the authority's activities concerning the alleged filling of a mine hole/dump on its premises with industrial wastes and various other potential pollutants. Utilizing the same standards noted above, we do not find such action on the authority's behalf to be abnormally dangerous. There can be little question that plaintiffs' allegations — if proven to be true — indicate a course of action for which the authority may be held liable. Plaintiffs' allegations do not, however, portray an activity that is abnormally dangerous. Landfilling a mine hole is not an

uncommon activity and cannot be inappropriate to the location since the hole must be filled where it is located. More importantly, landfilling is not the sort of activity that cannot be executed safely with the exercise of reasonable care. To the contrary, if performed.in an appropriate manner, such an activity can be safe and productive. A determination as to what constitutes an "appropriate" or "reasonable" means of landfilling is not before us, and as a question of negligence, is a matter delegated to the finder of fact. The authority's demurrer to that portion of plaintiffs' Count one which relates to the filling of the mine hole/dump is granted.

The authority's contention that it is exempt from liability absent negligence because it is a municipal corporation organized under statute and carrying out its operations in pursuance of a public duty, need not be addressed at this time in view of our findings that the activities of the Authority are not abnormally dangerous. Accordingly, we withhold any decisions as to that aspect of the demurrer.

## ORDER OF COURT

And now, this May 14, 1984, the preliminary objections of defendant, Lehigh-Northampton Airport Authority, to Count one of the complaint are granted in part and dismissed in part. The demurrer is granted insofar as it concerns paragraphs 56 and 57 of the complaint, relating to the underground storage of petroleum products and to the filling of the mine hole/dump. The remaining grounds for the demurrer are denied and dismissed in accordance with the foregoing opinion.